UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| PHIL DEWEY SEBASTIAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 11-387-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Phil Dewey Sebastian ("Sebastian" or "the Claimant") and Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner"). [Record Nos. 6, 7] Sebastian argues that the Administrative Law Judge ("ALJ") erred in finding that he is not entitled to a period of disability, disability insurance benefits, or supplemental security income. The Commissioner contends that the record contains substantial evidence in support of the ALJ's decision denying benefits to Sebastian, and should be affirmed. For the reasons discussed below, the Court finds that substantial evidence supports the Commissioner's decision. The Court will grant the Commissioner's motion and deny the relief requested by Sebastian.

**I.**

Sebastian filed an application for a period of disability, disability insurance, and supplemental security income on July 15, 2008, under Title II of the Social Security Act. [Tr.,

-1-

pp. 151-58] He alleged disability beginning June 6, 2007. [Tr., p. 155] Sebastian's claims were

denied initially and upon reconsideration. [Tr. pp. 73-78] On February 6, 2009, Sebastian filed

a request for an administrative hearing. [Tr., p. 18] On July 14, 2010, he appeared and testified

at a hearing before ALJ Christopher B. McNeil. Also testifying were medical expert Henry N.

Maimon, M.D. (by telephone) and Donald E. Shrey, Ph.D, a vocational expert. Sebastian was

represented at the hearing by attorney Deborah Feldman.

Sebastian was 51 years old at the time of the ALJ's decision. [Record No. 7, p. 2] He

has a ninth grade education, and worked for ten years as an auto body manager. [Tr., p. 58]

After reviewing the record and testimony submitted during the administrative hearing, ALJ

McNeil concluded that Sebastian suffers from the severe impairments of degenerative disk

disease and failed back syndrome. [Tr., p. 20] Notwithstanding these impairments, the ALJ

found that Sebastian has the residual functional capacity ("RFC") to perform less than the full

range of light work as defined in 20 C.F.R. 404.1567(b). [Tr., p. 22] Specifically, ALJ McNeil

found that Sebastian has the RFC to:

> occasionally lift 20 pounds and frequently lift 10 pounds. He can push or pull
> about 10 pounds using hand or foot controls. He can sit, stand, and walk about
> 6 hours each in an 8-hour workday. He cannot use ladders, ropes, or scaffolds.
> He can only frequently use ramps or stairs. He can only occasionally stoop or
> crawl. He can only frequently balance, kneel, and crouch. He also must avoid
> concentrated exposure to vibration.

[*Id.*] Based upon the testimony of the vocational expert, the ALJ found that Sebastian could

perform his past work as an auto body manager, as well as other jobs existing in significant

numbers in the economy, such as a bottle packer or a service estimator.  [Tr., p. 27]  As a result

of this assessment, ALJ McNeil found that Sebastian was not disabled.[1]  [*Id.*]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in

'substantial gainful activity' because of a medically determinable physical or mental impairment

of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th

Cir. 2007).  A claimant's Social Security disability determination is made by an ALJ in

accordance with "a five-step 'sequential evaluation process.'"  *Combs v. Comm'r of Soc. Sec.*,

459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the

claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with

respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that he is not engaged in substantial gainful

employment at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, the claimant must show that he suffers from a severe impairment or combination of

impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Third, if the claimant is not engaged in

substantial gainful employment and has a severe impairment which is expected to last for at least

twelve months and which meets or equals a listed impairment, he will be considered disabled

without regard to age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).

---

[1]The ALJ did not explicitly state in his decision that Sebastian's claim for SSI benefits was denied.  However, a Claimant must prove that he is disabled under the same definition regardless of whether he is applying for disability, disability insurance, or supplemental security benefits (or some combination thereof).  *See* 20 C.F.R. §§ 404.1505 *et seq.*, 416.905 *et seq.*  The ALJ's finding that Sebastian is not disabled logically extends to a denial of SSI benefits.

Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g).

## III.

### A.     The Cane Determination

Sebastian argues that "the ALJ erred in evaluating the use of the cane[,] which would not allow Mr. Sebastian to do more than sedentary work since he must hold onto the cane in one hand while standing or walking[,] and thus cannot use two hands to work while doing this." [Record No. 6, p. 5] The Commissioner contends that Sebastian did not establish that the cane was medically required. [Record No. 7, p. 4] Regarding ambulatory assistive devices, like canes, Social Security Ruling 96-9p provides:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (*i.e.*, whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

Sebastian asserts that the ALJ erred when he found that there was no medical basis establishing Sebastian's need for a cane. He cites treatment notes by Dr. Skidmore which

indicated that he had an "antlagic" and "guarded" gait.  [Tr., pp. 309, 319, 335, 337]

Additionally, he argues that the ALJ "cannot rely on the [State agency physicians to whom he

gave great weight], since [*sic*] these doctors were not aware of the cane, only included in the

record at Tr. 417-418 after the hearing."  [Record No. 6, p. 7]  However, this argument shows

how little medical evidence existed in the record to support Sebastian's assertion that he needs

a cane.  The sole piece of medical evidence regarding a cane was a prescription, with no

treatment notes or objective basis, provided after the hearing.[2]  [Tr., pp. 417-18]  Dr. Maimon,

an expert witness with a superior view of the record, was not aware of the cane because of the

lack of *any* medical documentation regarding Sebastian's use of a cane.

Conversely, there was substantial evidence supporting the conclusion that Sebastian did

not need a cane.  When asked by the ALJ  at the July 2010 hearing if he always uses a cane, he

answered affirmatively and testified that he had used a cane for two years.  [Tr., p. 54]  Yet the

only medical evidence documenting Sebastian's use of a cane is the November 27, 2009,

prescription written by Dr. Ravencraft.  [Tr., p. 418]  In the prescription and treatment notes,

there was no description "establishing the need for a hand-held assistive device to aid in walking

or standing" nor was there any medical documentation that described the circumstances for

which it was needed.  1996 WL 374185, at *7.  [Tr., pp. 400, 418]  Additionally, upon

examination in 2008, Dr. Coury specifically found that Sebastian did not require a cane or any

other ambulatory assistive device.  [Tr., p. 363]  The ALJ also noted that "the treatment record

---

[2]Arguably, notes from Dr. Skidmore regarding Sebastian's gait might tend to show that Sebastian required a cane.  However, Dr. Skidmore never gave any of the medical information required under SSR 96-9p.  [*See* Tr., pp. 309, 319, 335, 337.]

fails to document an objective basis for [Dr. Ravencraft's] decision to prescribe a cane for ambulatory assistance. There is no documentation of back complaints at [Sebastian's] February 2010 office visit with [Dr. Ravencraft]," after the cane was prescribed. [Tr., p. 24] Thus, the ALJ relied on Dr. Coury's finding, the discrepancy between the testimony regarding the cane, and the lack of medical documentation to find that a cane was not medically necessary. In short, substantial evidence supports the ALJ's finding regarding the cane.

### B.    Medical Opinion Weight

Sebastian also claims that the ALJ erred in considering the medical opinions of various doctors. Sebastian alleges error with ALJ McNeil's decision to give treating physician Dr. Sander's opinion "less weight" than the opinions of the State agency physicians and consultative physician Dr. Coury. [Tr., p. 25] Generally, a treating source's medical opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992). If the treating source's opinion is not entitled to controlling weight, this does not necessarily mean that the opinion should be completely rejected. Rather, the ALJ must determine what weight to give to medical opinion by considering the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with regard to the record as a whole; (5) whether the treating source is a specialist in the area of his or her opinion; and (6) any

other factors which tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)-(6).  The ALJ must always give "good reasons" for accepting or rejecting a medical opinion.  20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2).

### 1.    Dr. Sander

The only medical evidence from Dr. Sander in the record is a "medical assessment of ability to do work-related activities" dated November 27, 2009.[3]  [Tr., pp. 392-397]  Dr. Sander stated that Sebastian could "frequently lift, push, or pull no more than 5-10 pounds."  [Tr., p. 25]  Dr. Sander also averred that Sebastian:

> can stand for only 1-2 hours in an 8 hour workday and for only 15 minutes without interruption . . . . can sit for only 3-4 hours in an 8-hour workday and for only 30 minutes without interruption . . . . can never climb, kneel, or crawl and can only occasionally balance, stoop, and crouch.

[*Id.*]  Dr. Sander also found that: Sebastian could not reach overhead with any weight; he should avoid exposure to heights, moving machinery, temperature extremes, and vibrations; and he cannot react quickly to dangerous situations.  [*Id.*]  He concluded that Sebastian "will likely miss more than three days of work each month due to his impairments and cannot sustain work activity for 8 hours a day, 5 days a week on a continuing and sustained basis."  [*Id.* (citing Tr., pp. 391-97)]

---

[3]The record contains some treatment notes from Dr. Ravencraft, who, like Dr. Sander, is also of Patient First Group.  However, ALJ McNeil refers to Dr. Sander as a primary care physician and Sebastian calls Dr. Sander his treating physician, despite the fact that the only medical evidence in the record from Dr. Sander is the single physical assessment.  Ordinarily, a physician who examines a social security disability claimant only once and writes a single "physical capacity evaluation" is not considered a treating source to be accorded the highest level of deference.  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d at 876.  The Court will assume, based on Sebastian's assertions, that Dr. Sander has examined Sebastian "for many years."  [Record No. 6, p. 11]

ALJ McNeil's analysis of Dr. Sander's opinions did not violate the treating physician rule. ALJ McNeil specifically stated that he gave Dr. Sander's opinion less weight because: (1) the objective medical evidence does not fully support Dr. Sander's opinion on Sebastian's functional limitations, and (2) Dr. Sander's opinion on Sebastian's limitations are not consistent with Sebastian's reported daily activities. [Tr., p. 25] Pursuant to the regulations, the ALJ considered the supportability and consistency of the opinion when compared to the record as a whole, finding it inconsistent and unsupported. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). In addition, Dr. Sander's opinions on Sebastian's ability to work — for instance, the statements that Sebastian could not sustain full-time work and would need to miss three days of work a month — are not medical opinions. Rather, they constitute "opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case" and are afforded no special significance. 20 C.F.R. § 404.1527(d). Thus, the ALJ applied the correct legal standard in considering the opinion evidence. *See Rogers,* 486 F.3d at 241.

The ALJ's first conclusion regarding Dr. Sander (*i.e.*, that objective medical evidence contradicts his findings) is supported by substantial evidence. The record shows that ALJ McNeil compared Dr. Sander's opinion to the findings of Dr. Ravencraft, Dr. Coury, and Dr. Maimon, and concluded that there were discrepancies concerning Sebastian's functional capabilities. [Tr., pp. 24-25] For example, the ALJ considered the opinion of impartial medical expert Dr. Maimon that Sebastian should not carry more than twenty pounds and should not climb or crawl, but that, despite his back impairment, Sebastian is able to function and work. [Tr., p. 25] The ALJ gave greater weight to Dr. Maimon's opinion because "Dr. Maimon had

-9-

a superior longitudinal view of the record and he is familiar with the Social Security regulations." [*Id.*; *see also* 20 C.F.R. §§ 404.1527(c)(6), 404.416.927(c)(6)]  In addition, Dr. Coury found that Sebastian had no difficulty getting on and off the examination table or "heel and toe" walking.  [Tr., p. 362]  Finally, findings from state agency consultants Drs. David S. Swan and Robert K. Brown indicated that Sebastian has moderate, but not severe, functional limitations. [Tr., pp. 364-371, 375-385] There is substantial evidence supporting ALJ McNeil's findings on the objective medical evidence.

The ALJ's other reason for assigning less weight to Dr. Sander's opinion (*i.e.*, that Sebastian's daily activities are not consistent with Dr. Sander's allegations of disabling limitations) is also supported by substantial evidence.  Although Sebastian testified that he has difficulty putting on his socks and shoes that cannot bend over the sink to do the dishes, there is also evidence that he fixes meals, cuts the grass on a riding mower, and waters and feeds his animals.  [Tr., pp. 4, 57, 192-93]  Additionally, Sebastian reports that, while alternating between sitting and standing, he fishes, plays cards, hunts, and attends NASCAR and bull riding events. [Tr., p. 192]  Even though there is some evidence regrading Sebastian's reported activities that could show functional limitations, there is substantial evidence of Sebastian's  daily activities that supports the ALJ's decision.

It is well-settled that the Commissioner's decision, when supported by substantial evidence, should be affirmed even if the claimant's position is also supported by substantial evidence. *See Smith*, 482 F.3d at 876.  Because the ALJ correctly applied the standards of the treating physician rule to his determination of Dr. Sander's opinion, and because substantial

evidence supports his findings, the Court finds no error with the Commissioner's decision on this

point.

### 2.    Other Physicians

Next, Sebastian asserts that the ALJ erred in assigning weight to all of the physicians.[4]

[Record No. 6, p. 10]  The Commissioner argues that the ALJ considered the opinions of the

physicians and explained his reasons for assigning their respective weights and thus did not err.

Having considered all matters in the record of this proceeding, the Court concludes that

the ALJ considered the relevant factors in its determination of the weight given to the doctors,

and sufficiently explained his reasons for the weight given.  The ALJ gave significant weight to

Dr. Maimon, an impartial medical expert; gave great weight to the non-examining, non-treating

state agency physicians; gave some weight to examining, non-treating physician Dr. Coury; and

gave less weight to primary care physician Dr. Sander.  The Court has previously discussed the

substantial evidence supporting the ALJ's determination of the weight given to Dr. Sander and

the comparison to the other physicians, and finds no error with respect to the determination

regarding the other physicians.  ALJ McNeil adequately explained his reasoning, relying on

consistency with the record, familiarity with social security regulations, the view of the record,

longitudinal picture, and supportability.  *See* 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

---

[4] Sebastian cites *Ealy v. Commissioner*, 594 F.3d 504, 514 (6th Cir. 2010), in support of his assertion that "[t]his is backwards as the Court said there." [Record No. 6, p. 10]  This argument is dubious.  In *Ealy*, the Sixth Circuit found no error with the ALJ's determination of the weight given to treating, examining, and consultative physicians. *See* 594 F.3d at 514.  The Sixth Circuit did not determine that the weight given to the physicians' opinions was "backwards." *See id.*

## C.    The Pain Evaluation

Sebastian also alleges that the ALJ erred in considering Sebastian's subjective complaints of pain. And he argues that the ALJ does not adequately explain the his findings. [Record No. 6, p. 12]   The Commissioner contends that "an ALJ is not required to accept a claimant's testimony as fully credible" and that "the absence of objective medical evidence" belied Sebastian's credibility on the severity of his pain.  [Record No. 7, p. 6]

Sebastian asserted that he has been unable to work since June 6, 2007, due to lower back injury and disc herniation.  [Tr., p. 22]  He complained of severe stabbing pain, and a constant burning ache and numbness in his right leg.  [*Id.*]  ALJ McNeil found that Sebastian's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC]."  [Tr., p. 23]

ALJ McNeil stated several reasons for his finding on Sebastian's credibility regarding his pain level.  He noted that Sebastian's June 2007 spinal surgery was successful and that he was released to return to full activities and work on August 20, 2007. [*Id.*]  Also convincing to ALJ McNeil was the medical advice Sebastian was given after his second surgery in October 2007, where he was advised to begin a physical therapy and walking program of up to one mile per day.  [*Id.*]  Additionally, Sebastian was looking for flexible employment by January 25, 2008. [Tr., p. 24]  The ALJ indicated that "[t]here is little objective medical evidence in the record regarding the claimant's back pain throughout 2008."  [*Id.*]  The objective medical evidence that did exist showed a lack of nerve root compression, one common cause of back

pain. [Tr., pp. 42-43]  ALJ McNeil considered that, "[w]hile the claimant complained of back pain and some radiation to his right leg . . . in August 2008, he also related that he takes Percocet to alleviate his pain only occasionally and that Motrin 800 really works well" [*Id.*]  And the ALJ considered the fact that Sebastian declined surgery and interventional pain management on April 13, 2009.  [Tr., p. 387]

The ALJ is charged with the responsibility of observing the demeanor and credibility of witnesses.  An ALJ's credibility determination is entitled to "great weight and deference" provided it is "reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476.  Because ALJ McNeil's determination about Sebastian's credibility (*i.e.*, that his statements about the intensity, persistence and limiting effects of these symptoms were not entirely credible) is "reasonable" and "supported by substantial evidence in the record," it is entitled to great weight and deference. *Id.*  Thus, the ALJ did not err in assessing Sebastian's claims of disabling pain.

### D.   Hypotheticals

Finally, Sebastian argues that the ALJ erred in relying on the answers to improper hypothetical questions posed to the vocational expert.  He contends that the questions "were based only on the limitations set out by the non-examining doctors and left out the supported need for the cane while standing and the need to alternate between sitting and standing to work 40 hours a week." [Record No. 6, p. 14]  He also argues the questions left out the alleged need to "miss[] more than three days of work a month." [*Id.*]

As discussed previously, the weight given to Dr. Sander's opinion was not improper, including Dr. Sander's opinion about how many days of work a month Sebastian would miss. Additionally, the medical need for a cane was not "supported" under Social Security Ruling 96-9p, because Sebastian failed to show "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." *See* 1996 WL 374185, at *7.

The Sixth Circuit has held that a hypothetical question posed to a vocational expert "need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (citing *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001)). Additionally, the vocational expert's testimony relies on the ALJ's assessment of what the claimant "can or cannot do." *Id.* Here, the ALJ posed proper hypothetical questions to the vocational expert based on Sebastian's credible functional limitations. For example, he asked:

> Assuming an individual with the education and past relevant work as previously identified, not including the stock breeding, individual can occasionally lift 20 pounds, frequently lift 10 pounds, push or pull about 10 pounds using hand or foot controls, can sit, stand or walk about six hours each in an eight hour workday, cannot use ladders, ropes or scaffold, can only frequently use ramps or stairs, can only occasionally stoop or crawl, can only frequently balance, kneel or crouch and must avoid concentrated exposure to vibration. Could such an individual perform any of the claimant's past work?

[Tr., p. 66] This question shows that the ALJ included his RFC finding, including his findings on Sebastian's functional limitations, in his question to the vocational expert. Because substantial evidence supports the ALJ's finding on Sebastian's RFC, or what he can or cannot do, the hypothetical questions posed to the vocational expert were not improper.

-14-

**IV.**

ALJ McNeil did not err in his determinations regarding the use of a cane or the weight

given to the medical opinions in this case.  Additionally, the hypothetical questions posed to the

vocational expert were not improper.  Accordingly, it is hereby

**ORDERED** as follows:

(1)    Plaintiff Phil Dewey Sebastian's Motion for Summary Judgment [Record No. 6]

is **DENIED**.

(2)    Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 7] is

**GRANTED**.

(3)    The administrative decision of Administrative Law Judge Christopher B. McNeil

will be **AFFIRMED** by separate judgment entered this date.

This 17th day of September, 2012.



Signed By:

_Danny C. Reeves_  DCR

United States District Judge